## ALLEN v. CITIZENS' STEAM-NAVIGATION COMPANY.

F., WHILE employed as boat captain by the defendant, a corporation, subscribed for its stock to the amount of $2,000, and shortly after advanced to the company eight hundred and twenty dollars upon a verbal condition that if he should be retained in his position as captain the money should be applied on his stock subscription; but otherwise should be considered a loan, and repaid. F. was soon after discharged from the employment, and then assigned his demand to plaintiff: *held*, that plaintiff was entitled to recover of defendant the amount advanced as money had and received.

The authority of an agent of a private corporation to bind it by a contract for borrowing money may be shown without proof of a resolution of the Board of Trustees directly conferring the authority, or of any formal ratification by them of the contract. It may be inferred from proof of the character of the agency, of the acts of the agent, and the knowledge of the officers and directors of his habit to make similar contracts and their acquiescence in the same, and the fact of the money being applied to the use of the corporation.

APPEAL from the Sixth Judicial District.

This is an action brought by Easton Allen, as assignee of one Farris, to recover of the Citizens' Steam Navigation Company, a corporation, the sum of eight hundred and twenty dollars, which, in 1854, was paid by Farris to one Chapman, then the agent of defendant. Farris was at the time employed as captain of one of defendant's boats and was solicited by Chapman to subscribe to the stock of the company, and expressed his willingness to do so, provided that he could retain his berth as captain. With that understanding, he subscribed $2,000, and shortly after advanced to Chapman eight hundred and twenty dollars under an agreement with him that if his employment as captain continued it should be

applied as payment on the subscription; but if not, that the amount should be repaid.

Early in 1855, Farris was discharged from employment and he soon after assigned his demand against the company to plaintiff. The points principally controverted on the trial were : 1st, the exact terms of the agreement and its effect; 2d, the authority of Chapman to bind the corporation by a verbal agreement; and, 3d, whether certain subsequent acts and conversations of Farris operate as an estoppel.   On the first point, Farris testified :

" In 1854, along in July or August, I went to work as captain of the ' Enterprise,' running from San Francisco to Marysville. Eben Chapman was agent of the company, and hired me to go on the boat.   I ran the ' Enterprise ' as captain of the boat.   After I was on the boat, Mr. Chapman wanted me to take some stock.   I told Chapman I would take $2,000 of it—would subscribe for that amount, provided I retained the situation I then had.   If I did not, I did not want the stock.   I did subscribe under that consideration, that I would take that amount if I retained the situation.   I loaned Chapman three hundred or three hundred and twenty dollars, and after that five hundred dollars, with the understanding that if I took the stock I was to retain the berth, and that this money should go on the stock I subscribed for, but if I did not keep the situation, it was to be paid back by him, Chapman, from the company.   I loaned it to Chapman for the company.   Wanted it on Saturday night to pay off the hands that had worked.for the company."

As to Chapman's authority, he himself testified :

" I was in the habit of raising money sometimes by drawing on the Secretary of the company, at Marysville—sometimes by getting notes discounted—notes which I gave as agent, and sometimes giving my own note, and getting a friend to indorse for me.   I think we got through building in October, 1854.   I cannot state the amount precisely that I borrowed, as I sometimes borrowed and paid shortly afterwards.   I suppose it could not fall short of $80,000.   At the time we finished building, the company owed me from $20,000 to $25,000, of money borrowed by me.   When I would write to them for money, as I frequently did, I would receive

instructions from the Secretary to raise money here, as none could be raised in Marysville. The company gave me no direct instruction about the employment of Farris. He continued on the boat for some time—some two months, more or less. The boat was laid up after running some two months, for repairs, and Captain Summers was then appointed by the company. The understanding when Captain Farris subscribed was that the money he paid should be returned unless he retained his berth on the boat. After the captain was displaced from the ' Enterprise,' he said to me that he wanted me to pay him back the money. The money I received from Farris was paid out for the company, principally I think, in the running account of the ' Enterprise."

Letters from the officers to Chapman, written shortly previous to the transaction, were produced, in one of which the Secretary said: " Herewith you have all the authority from the Board of Directors that you require to ruin us all, or at least to run us into debt so deep that we shall wish ourselves out again." And in another: " I hope you will select some good man for the Enterprise." And again : " How much money will you want to clear the boat, and send her afloat clear from debt ?"

On the question of estoppel, defendant proved that on the ninth of March, 1855, Farris rendered an account against the company of debits and credits, upon which he had a settlement with the company. In this account no mention was made of the demand on which this action was brought ; that on the thirtieth of April, 1855, Chapman had another settlement with said company. In his account, consisting of debits and credits, no mention is made of the demand on which this action was brought. This account, Chapman verified as a complete statement ; and in his verification thereof, he stated that the demand sued on in this action was due from him to said Farris, and was in nowise connected with the business of said company. Chapman also testified that in January, 1855, Farris called on him for the eight hundred and twenty dollars, and to a question in the following words: " Was nothing done by the company to recognize the indebtedness alleged by Farris ?" he made the following answer : " It was never rendered in my account between myself and the company. It was kept out by mutual understanding between myself and Farris."

The Court found : 1st, that the respondent through its authorized agent, E. Chapman, on the twenty-seventh of August, 1854, borrowed of one John R. Farris, the sum of three hundred dollars, and on the fourth of September, 1854, borrowed from the same John R. Farris, the further sum of five hundred dollars, with the understanding that if the said Farris kept his situation as captain of the steamboat "Enterprise," it should apply on account of his stock subscription, otherwise not—and that the same has never been paid either in whole or in part ; 2d, that said claim was duly assigned to plaintiff.   On these findings, judgment was rendered for plaintiff. Defendant moved for a new trial, which was denied ; and from this order and from the judgment he' appeals.

*John Currey*, for Appellant.

I.   It does not appear, by the evidence, that Chapman had any authority to make any contract with Farris to give him a permanent situation, or to agree to any conditions to be annexed to the subscription which Farris proposed to make for stock ; nor does it appear that Chapman agreed to any such conditions.

Parol evidence of a previous or cotemporaneous *colloquium*, or of conversations or declarations at or before or after the time when the contract is reduced to writing and signed, is inadmissible.   (1 Green. Ev. Secs. 275–277 ; Starkie's Ev., Part VI, 995–1010 ; *Mumford* v. *Hallett*, 1 John. 439 ; *Rankin* v. *Am. Ins. Co.*, 1 Hall, 619 ; *Creery* v. *Holly*, 14 Wend. 26.

II.   Chapman and Farris, by a collusive arrangement, attempted to defraud the company of the principal sum of money sued for in this action.

The conduct of both Chapman and Farris, was to induce the company to act otherwise than they would have done if the truth had been stated—if, in fact, the truth respecting this demand be as Farris now pretends.

If the claim had been made by Farris against the company before the settlement with Chapman, and they had deemed it proper to allow it and pay it, then it would have been made to enter into Chapman's account, and Chapman would have been charged with it ; while, as it was, the company paid Chapman a balance, which

they could have justly withheld from him, and thus compelled him to account for the money he had obtained from Farris on the company's credit.

The rule of law is, that a party is concluded by admissions or conduct upon which others have been induced to act to their prejudice. (1 Phillips' Ev. 360; 1 Cow. & Hill's Notes, 367; Starkie Ev. Part IV, 31; *Quick* v. *Staines*, 1 Bos. & Puller, 295; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483; *Chapman* v. *Searle*, 3 Pick. 38; *Wallis* v. *Truesdell*, 6 Id. 455; *Stephens* v. *Baird*, 9 Cow. 274; *Hollister* v. *Johnson*, 4 Wend. 642; *Demyer* v. *Souger*, 6 Id. 436, 437; *Flower* v. *Herbert*, 2 Vesey, sen. 325, 326; *Pickard* v. *Sears*, 6 Adol. & Ellis, 469; *Gregg* v. *Wells*, 10 Id. 90; *Dezell* v. *Odell*, 3 Hill, 222.)

If Farris loaned the money to the company, as he now pretends, he intentionally misled them, and that, too, with the view to have them defrauded in their settlement with Chapman. (See 1 Story's Eq., Secs. 191, 192, and Notes.)

The subscription paper contained no stipulation or condition for repayment of the money advanced to said Farris on any condition whatever.

The contract, evidenced by this subscription paper, is clear, unambiguous, and conclusive, and as I have already shown, cannot be added to or altered by parol evidence.

That such subscription was binding as a contract on the subscriber, John R. Farris, see the following authorities: (*Lake Ontario, Auburn and New York R. R. Co.* v. *Mason*, 16 New York, 451; *The Rensalaer and Wash. Plank Road Co.* v. *Barton*, Id. 457; *Cross* v. *Jackson*, 5 Hill, 478; *Stanton* v. *Wilson*, 2 Id. 153; *Stewart* v. *Trustees of Hamilton College*, 2 Denio, 417; 1 Wheaton's Selwyn, 32, and cases there cited; *Train* v. *Gold*, 5 Pick. 384; *Am. Acad.* v. *Cowls*, Id. 427.)

And that it was not made in the books of the company does not alter the case. (7 Barb. 158, 160; 21 Id. 454; 1 Kernan, 102; 14 Wend. 23; 9 John. 217; 21 Wend. 274.)

*George Cadwalader*, for Respondent.

The stock was subscribed for before any money was paid, and the

Allen *v.* Citizens' Steam Navigation Company.

condition attached to the payment of the money was, that if he, Farris, kept his situation, it should apply upon his stock subscription—otherwise it should be returned to him.   We are not suing upon the stock subscription, and neither are we sued thereon.   Nor did our right of action accrue at the date of the subscription, but at the date of the advances made by us to the defendant.

The stock subscription and its conditional character were proved, merely to illustrate the condition upon which we let our money go into the hands of the defendant; and, in this view of the case, it is wholly unnecessary to inquire into the validity of the subscription, or whether parol evidence is admissible to vary its terms.

The defendant does not rely upon the "subscription" as a defense ; to do so he must recognize Farris as a stockholder, and show that the eight hundred and twenty dollars was necessary to liquidate the assessments upon the stock held by him.   Neither does Farris rely upon the subscription, or upon a contract of a date even with the stock subscription.

When Farris is sued upon his "subscription," then the question may arise, whether he can show its conditional character by parol evidence, and the cases cited by counsel may possibly be applicable.

The advance of money, from whence springs our right of action, was not contemporaneous with the stock subscription, and was not made to apply thereon except subject to a condition which failed. The money procured from Farris was used in paying off the hands upon the company's steamer Enterprise ; this fact of itself dispenses with all proof of agency.   Dunlap's Paley's Agency, 165, says :  " But the fact of articles purchased having come to the use of the master, is *prima facie* sufficient to make him liable." Upon the other points made by appellant, it is sufficient to refer to the evidence.

NORTON, J. delivered the opinion of the Court—COPE, C. J. concurring.

The evidence was sufficient to sustain the finding that the money was advanced as a loan, to be applied as payment on the stock subscription, if Farris was continued in his place as captain of the

Flagley *v.* Hubbard.

Enterprise ; but if not so continued, then to be repaid.    It is hence not necessary to decide whether, if the money was paid on the stock subscription, it could be reclaimed in consequence of the verbal condition upon which the subscription was made.

Although there was no direct authority given to Chapman by resolution of the Board of Directors to borrow the money, nor any direct ratification by resolution of the Board, yet the evidence of the character of Chapman's agency and of the acts which he did, and the knowledge which the officers and directors of the company had of his habit to borrow money for the defendant in the course of his agency, and the fact of the money being applied to the use of the defendant, was sufficient to warrant the finding that the money was borrowed for the defendant by its lawful agent.

The withholding of this item from the account rendered by Chapman by an understanding between him and Farris, indicates a purpose at the time to consider the money advanced either as a payment on the stock subscription or a loan to Chapman, instead of the defendant; but it does not change the fact that the money was loaned to the defendant, as found by the Court on the evidence, nor was it an act which, especially when considered in connection with the proof as to what transpired between the officers of the company and Farris in regard to this claim, and the reference to it in the affidavit annexed to Chapman's account, can operate as an estoppel against claiming the amount as due from the defendant.

Judgment affirmed.