# Case No. 5,740.

## In re GREAT WESTERN TEL. CO.

### [5 Biss. 363.] [1]

District Court, N. D. Illinois. July, 1873.

BONA FIDE HOLDER — LIS PENDENS — NOTES OF CORPORATION—USAGE—INCIDENT TO BUSINESS —AUTHORITY OF OFFICERS PRESUMED.

1. A bona fide transfer of an interest in a partnership may be made without writings or vouchers.

2. A person may be a bona fide holder of a promissory note without having paid for it in cash, if it is a genuine business transaction in which he believed that he was paying with a valid and valuable asset.

3. The fact that he considers the maker of a note "slow" does not show that he is not a bona fide holder, especially where it appears that he paid for the note in other securities equally "slow."

4. A note in the hands of a bona fide holder is not avoided by the fact that the contract in part payment of which it was issued was fraudulent, and proceedings to annul the contract were pending at the time the note was issued.

5. Though the rule of lis pendens would apply to a contract assigned during the pendency of litigation over it. the doctrine cannot be carried so far as to affect commercial paper given by the litigating parties.

6. Where a promissory note is fair upon its face, an indorsee is not bound to inquire into the consideration or circumstances under which it was given.

7. A corporation may be bound by promissory notes issued by its treasurer in accordance with a usage, as well as by express authority.

8. The power to make commercial paper is incident to a business corporation, and the usual executive officers are presumed to act within the scope of their authority, and every intendment will be made to support the paper given, especially when signed by the financial officer of the company.

In bankruptcy.

This was a motion by the respondent, the Great Western Telegraph Company, to set aside the adjudication of bankruptcy previously entered against it on the petition of John C. Hilton, a creditor. The petition was filed on the 8th of February, 1873, and on the 28th of April, the company was adjudicated bankrupt. The company then filed a petition for review by the judge of the circuit court on the ground of newly discovered evidence, but the circuit court refused to hear this testimony and remitted the case to the district court. This court then allowed the respondent to introduce this testimony, and this motion was made on the final submission of the proofs. Hilton's claim against the company consisted of judgments rendered in the circuit court of Cook county on three promissory notes given by the company to Selah Reeve, dated June 6th, 1872, for $6,-

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

603.16 each, due respectively in four, five and six months after date, and one note for $869, dated August 1st, 1872, due in four months from date, all indorsed by Reeve to Hilton. These notes all bear interest at the rate of ten per cent. and were signed by George L. Otis as treasurer of the company. The respondent claimed that the notes were invalid, having been executed and delivered after the publication of the decision of the circuit court of Cook county in the case of J. M. Terwilliger, against the respondent Selah Reeve and David A. Gage, declaring void a certain contract entered into between the company and Reeve, and decreeing an accounting. The respondent also denied that Hilton was a bona fide holder of the notes. The notes which Hilton held were originally transferred by Reeve to David A. Gage, and on the — day of July, 1872, transferred by him to Hilton in exchange for his interest in the firm of Reid, Sherwin & Co., in which both Hilton and Gage were partners, their respective interest therein being about $20,000. There being a disagreement in the firm, Gage and Hilton both proposed to withdraw, but Hilton, not being able to make a satisfactory settlement with the other partners, assigned his interest in the firm to Gage, who assumed the negotiation in his own name for the adjustment of the partnership. Gage finally adjusted his interest in the firm, including the interest of Hilton assigned to him, together with a mortgage which he held upon their property at $60,000, which was secured by a second mortgage on the firm property for that amount payable in installments of $5,000 each. The notes were originally issued to Reeve on a contract with him for building a telegraph line from Chicago to Princeton, and transferred by him to Gage in re-payment of advances to him on carrying out his contract.

BLODGETT, District Judge. I see nothing in the evidence pertaining to the transfer of the notes from Gage to Hilton tending to show it was not a bona fide transaction. Gage in dealing with Reid & Sherwin had claimed to own Hilton's interest in the business, and had included that interest in this long mortgage taken to himself. As between himself and Hilton, he was bound to pay Hilton what that interest was worth, and proposed to give him these notes of the telegraph company for Hilton's interest in the Reid & Sherwin matter, and the railroad bonds.

It is true that both Gage and Hilton state that no writings were executed between them, at the time Hilton assigned his unliquidated interest in the firm to Gage for adjustment; but I cannot deem that a circumstance of sufficient import to say that Hilton really had no interest in the firm. He and Gage were partners, and intimate friends; and I do not think the fact that vouchers were not exchanged, or writings executed, shows that Hilton had no bona fide claim against the firm to be adjusted. If he had, in fact, no such interest, it would have been easy to have proven it by the books of the firm of Reid & Sherwin, or by calling parties intimate with its affairs, neither of which was done.

It may be and probably is true that neither of the securities exchanged were deemed first-class. The Reid & Sherwin claim had a long time to run, because the mortgage debt, which formed at least one-half of the final balance of $60,000 struck in the settlement against Reid & Sherwin, would be first satisfied by the $5,000 installments as they were paid.

This $60,000 was also a second mortgage on the Reid & Sherwin property, and Hilton testifies that while he supposed the telegraph company notes were in all respects valid, yet he anticipated that some part of them might have to be renewed and extended. But the fact that an indorsee considers the maker of a note in doubtful credit, or, as the saying is "slow," does not show that the indorsee is not a bona fide holder, especially when it appears that he paid for the paper in other paper perhaps equally "slow." It is sufficient to say that the whole testimony, when taken together, seems to my mind to show that the transaction between Gage and Hilton, by which Hilton became the owner of this paper, was a genuine business operation in which each party at least supposed he was parting with a valid and valuable asset for another equally valid and valuable to himself.

It is, however, urged by the respondent that, notwithstanding Hilton paid value for these notes, yet he took them with knowledge of the equities of the company against the original payee to such an extent that they are chargeable with those equities in his hands.

The evidence to sustain this part of the case consists in the fact that the Terwilliger Case [59 Ill. 249] was pending in the supreme court of Illinois at the time these notes were made; that the substance of the bill in that case had been published in the papers of this city, which Hilton was in the habit of reading, and that the allegations of that bill and subject matter of the suit amounted to a caveat to all persons not to deal with Reeve in any matter growing out of his relations to the respondent. But I cannot believe any application of the doctrine of lis pendens has gone to the extent claimed in this case.

The Terwilliger bill charged that a certain contract made between Reeve and this company was fraudulent as against the bona fide stockholders of the company, and asked for an accounting in regard to the money paid and work done under that contract. The case had been heard before the learned and able circuit judge of Cook county, upon

proofs and arguments, and he had delivered an exhaustive opinion reviewing the evidence, and had dismissed that part of the bill for want of equity, from which Terwilliger had appealed. The opinion of his honor, Judge Williams, holding that there was no fraud in the contract, had been published in the papers of this city months after the publication of the synopsis of the bill, so that if any weight is to be given to publications in the papers of the substance of the bill, the opinion of the circuit judge at least neutralized the allegations of the bill, and as the record stood at the time Hilton became the purchaser of these notes, there was a judicial finding that the contract between Reeve and the respondent was not fraudulent for the causes alleged in Terwilliger's bill.

There was no injunction against this company at that time. It was in possession of long lines of telegraph and engaged in the construction of more. It had full control of its affairs through its officers. The bank where Hilton kept his account had recently discounted the paper of the company, and was then the holder of it, to the extent of several thousand dollars, and I cannot conceive that the doctrine of lis pendens should be held to have created a conclusive judicial presumption that this company could not on the 6th day of June, 1872, make a valid note to Selah Reeve or owe him a bona fide debt.

The general principle by which a third person is charged with notice under the doctrine of lis pendens is that the notice attaches only to the thing—the res—which is the subject matter of the suit. Here the subject matter of the suit was partly a contract between two of the parties to the suit, and probably Reeve could not have assigned that contract pending the suit without the assignees taking it subject to the result of that suit. But in regard to promissory notes, fair upon their face, an indorsee is not bound to inquire into the consideration of the note or the circumstances out of which it grew. The presumption is that the note was given for value, as well as that the indorsee paid value for it. And it seems to me it would be an abusive stretch of the principle of notice by lis pendens to hold that this respondent could not give commercial paper in its business transactions pending that suit.

Incidental to this point, it is also insisted that Otis, the treasurer, had no authority to give these notes, and that they are therefore void. It is insisted that, by the by-laws of the company, all deeds and contracts are to be signed by the president, and that it is nowhere made the duty of the treasurer, nor is he permitted, either expressly or by implication, to sign notes. By the fourth by-law it is provided that an executive committee shall be elected, consisting of three members of the board of directors, "who shall have, and they are hereby authorized to exercise, all the power of the board of directors."

On the 5th of June, 1872, a meeting was held by this executive committee, at which the following resolution was adopted, and spread upon the records of this company:

"Resolved, that the notes already issued by the treasurer in the name of the company in part payment of a bill for $37,019.25, from the contractor, are approved, and that the treasurer is hereby authorized and directed to settle by note for any balance remaining due on said bill."

It was conclusively shown on the former trial that these notes were given for part of the bill referred to in this resolution, and also that Otis, the treasurer, had been in the habit of giving notes of this character for upwards of two years last prior thereto.

The power of this executive committee was plenary to the extent of the powers of the board of directors. The executive committee had sanctioned these notes, and directed them to be given, notwithstanding the by-laws provided that the president should sign the deeds and contracts of the company. I have no doubt that the board of directors or the executive committee may also authorize any other person as the agent of the company to sign contracts. Here Otis signed these notes in pursuance of a usage which would raise the presumption that he had authority to do so, and also by virtue of express authority. I do not think it lies in the mouth of the company to question his authority.

The distinction between the acts of an officer of a government or municipal body and the acts of an officer of a corporation created for business purposes, is obvious. In the case of a government official, the signature or indorsement of notes or bills of exchange is exceptional and outside the usual functions of such officer. In the case of a business corporation like this, the power to make commercial paper like this is a necessary incident to the business which the corporation is created to transact, and the usual executive officers of the company are presumed to act within the scope of their authority, and every intendment should be made to support the paper given, especially when given by the financial officer of the company. But suppose, for the purpose of the argument, that is was the duty of Hilton, under the circumstances, to have made inquiry into the consideration of this paper and the power of the treasurer of the corporation to execute it, the evidence shows that the actual consideration of the notes was money which Gage advanced to pay for material and labor which actually went into the construction of a telegraph line for the company, and that he advanced this money with the understanding and agreement that he was to have these notes as security therefor. Making the notes payable to Reeve was only a matter of form. The money was

paid by Gage for the wire and labor, and the company had the benefit of it—there was no profit to the contractor involved in it. The company then was in debt to Gage, and could, through any agent or officer, give an evidence of that indebtedness, so that inquiry into and knowledge of all the facts would only have strengthened all the presumptions of the law in favor of the validity of the paper.

As this case is of great importance to stockholders of the respondent, I have carefully reviewed the evidence on which the former adjudication was made, as well as the new proof submitted on the last hearing, and I feel compelled to adhere to the conclusion at which I arrived on the former trial.

It has seemed to me, from the outset, that undue stress has been placed by respondent's counsel upon the effect that the Terwilliger Case should have upon this proceeding. Here this corporation, through its de facto officers, has contracted certain debts, for which its notes—commercial paper—have been given, which may not have been equitable, or even valid, between the original parties. These notes have passed into circulation, and are now in the hands of bona fide holders, who ought not to be made to suffer for the bad faith which, it is claimed, these officers have shown toward their constituency. It is surely better that these stockholders should suffer by the fraud of their own agents, than that the loss should fall on those who are within the pale of protection by the rules of commercial law. The motion for setting aside the adjudication is, therefore, overruled.

NOTE. An insolvent debtor may have his notes discounted when done bona fide, and still the purchaser will be protected though he know of the debtor's insolvency. Darby v. Boatman's Sav. Inst. [Case No. 3,571]. Consult the following on the transfer of an insolvent's property in good faith with no intent to defraud: Wadsworth v. Tyler [Id. 17,032]; Darby v. Lucas [Id. 3,573]; In re Buse [Id. 2,221]. See further as to the binding effect of contracts made by the officers of a corporation when strictly beyond their power but under a usage: Commercial Mut. Ins. Co. v. Union Mut. Ins. Co., 19 How. [60 U. S.] 318; Odiorne v. Maxcy, 13 Mass. 178, 15 Mass. 39; Beers v. Phoenix Glass Co., 14 Barb. 358; Smith v. Hull Glass Co., 11 C. B. 897, 9 Eng. Law & Eq. 442; Allen v. Citizens' Steam Nav. Co., 22 Cal. 28; Butts v. Cuthbertson, 6 Ga. 166. Contra, where the powers of a treasurer are expressly limited by the by-laws, they cannot be extended by inference from course of business. Torrey v. Dustin Monument Ass'n. 5 Allen (Mass.) 327. An agent of a corporation authorized "to sign all notes and business paper," binds the principal by giving accommodation notes which pass into hands of bona fide holders before maturity. Bird v. Daggett, 97 Mass. 494.
[Previously an attempt had been made to have the circuit court review the proceedings of the district court, by means of a petition for review and motions based thereon, but this the circuit court refused to do. Case No. 5,739.]