HIRAM WALKER v. THE DETROIT TRANSIT RAILWAY COMPANY AND JOHN ROBERTSON.

*Equity—Corporations—Wrongful transfer of stock—Cancellation of certificates—Director's control of assets—Indorsement of certificates of stock—Burden of proof—Testimony of witnesses in adverse interest.*

A court of equity cannot grant relief based upon a case substantially different from that stated in the bill, or involving other or additional parties.

One who is entitled to corporation stock wrongfully transferred to another can maintain a bill in equity to have the wrongful certificates cancelled and certificates issued to himself, if the loss of the stock cannot be adequately compensated in a common-law action.

It is immaterial, as against strangers, whether the person acting as managing director of a corporation received a specific appointment to that position from the board of directors, if he has long acted in that capacity without objection, and if his services as such have been invariably accepted.

The managing director of a corporation may properly have the custody of its assets; and if the corporation allows him, without objection, to hold himself forth as competent to dispose of its assets, strangers are entitled to presume that he has authority to do so.

Possession of certificates of corporate stock, properly indorsed, is *prima facie* evidence of their ownership; and a holder thereof for value, without notice of prior equities, obtains a perfect title thereto as against such equities.

Where the rightful owner of corporation stock invests another person with the usual evidence of title thereto, or an apparent authority to dispose of the stock, he is estopped from making any claim thereto against an innocent purchaser dealing on the faith of such apparent ownership or right of disposal.

Certificates of corporation stock are paper assets in the hands of their owner.

A *bona fide* purchaser of paper assets formerly owned by a corporation and indorsed by the proper officer thereof, may assume that the indorsement was duly authorized, and is not bound to search the corporation books for such authority before completing his purchase.

Blank indorsements of certificates of stock are legal.

Where the treasurer of a corporation seems to be the only officer who has power to indorse its paper assets, third persons may act upon his indorsements as if authorized by the corporation.

The president of a corporation purchased its interest in certain certificates of stock from its assignee at public auction, but the certificates had previously been passed by indorsement into other hands by the act of a member of the corporation who had been allowed by the president and corporation to act as managing director. *Held*, that as between the president and a *bona fide* purchaser of the assets, the title of the latter could not be disturbed.

Wherever a *prima facie* right is disputed, the burden of proof is on the party attacking it.

The fact that a party is compelled to rely on the testimony of persons in an adverse interest and that they testify reluctantly may justify special indulgence in the mode of examination, or have weight in passing upon the testimony, but it cannot supply the lack of proof or change the tendency of plain statements or admissions.

Appeal from the Superior Court of Detroit.    Submitted October 6, 1881.    Decided January 11, 1882.

BILL to obtain control of corporation stock.    Complainant appeals.    Dismissal affirmed.

*Maynard & Swan* and *C. I. Walker* for complainant. Certificates of stock are not negotiable under the law merchant: *Combs v. Hodge* 21 How 397; *Mechanics' Bank v. N. Y. & N. H. R. R.* 3 Kern. 621; *Weaver v. Barden* 49 N. Y. 286; *Fisher v. Bank of Essex* 5 Gray 373; *Shaw v.*

*Spencer* 100 Mass. 393; *In re Natal Investment Co.* 3 Ch. App. Cas. 354; *Directors of Sh. Un. Rys. v. Queen* 7 Eng. & Ir. App. 496; though a proper indorsement or power of attorney gives *prima facie* evidence of ownership, and a holder for value obtains perfect title against equities of which he had no notice : Field on Corporations § 134; *Mount Holly Turnpike Co. v. Ferree* 17 N. J. Eq. 117 ; *McNeil v. Tenth Nat. Bank* 46 N.Y. 325 ; and if the owner has invested another with the usual evidence of title or with apparent authority to dispose of the stock he will be estopped from making any claim against an innocent purchaser dealing on the faith of it : Field on Corp. §110 ; *Weaver v. Barden* 49 N. Y. 286 : 3 Lans. 339 ; a transfer of a certificate under a forged power of attorney does not transfer ownership : *Telegraph Co. v. Davenport* 97 U. S. 369 ; *Pratt v. Taunton Copper Co.* 123 Mass. 110 ; the treasurer of a corporation cannot transfer stock by his own indorsement without the authority of the board of directors : *Kalamazoo Nov. Co. v. McAlister* 36 Mich. 327 ; *N. Y. Iron Mine v. Negaunee Bank* 39 Mich. 644 ; in this case there was enough to put the bank to which the stock was transferred, upon inquiry : *Shaw v. Spencer* 100 Mass. 382 ; *Loring v. Salisbury Mills* 125 Mass. 138 ; *Magwood v. R. R. Bank* 5 S. C. 379.

*Herbert L. Baker* for defendant Transit Railway Company. The authority of the treasurer of a corporation to indorse certificates of stock is a question of fact : Ang. & Ames on Corporations §§ 229, 300 ; but in the absence of proof an assignment of a *chose in action*, formally executed by the treasurer of a corporation, is presumed regular : *Jackson v. Campbell* 5 Wend. 572.

*Russel & Campbell* and *Ashley Pond* for defendant Robertson. The title of a holder for value of certificates of stock, without notice of intervening equities, cannot be impeached : 2 Dan. Neg. Inst. § 1709 ; *Mandlebaum v. N. A. M. Co.* 4 Mich. 465 ; *Bank v. Lanier* 11 Wal. 377 ; *Lowry v. Bank* Taney's Dec. 328 ; *Salisbury Mills v. Townsend* 109 Mass. 115 ; a *bona fide* purchaser is not bound to look

beyond the certificates to learn the validity of former assignments: *Atkinson v. Atkinson* 8 Allen 15; *Driscoll v. Mfg. Co.* 59 N. Y. 96; *bona fide* vendees of stock should be protected against the secret or equitable claims of those who have given them the *indicia* of ownership: *Holbrook v. N. J. Zinc Co.* 57 N. Y. 616; *Moore v. Nat. Bank* 55 N. Y. 41; *Leitch v. Wells* 48 N. Y. 586; stocks are articles of commerce like commercial paper: *McNeil v. Bank* 46 N. Y. 325; *Railroad v. Schuyler* 34 N. Y. 30; *Bank v. Kortright* 22 Wend. 357; *Leavitt v. Miller* 4 Duer 1; *Cady v. Potter* 55 Barb. 463; *Smith v. Coal Co.* 7 Lans. 317; *Felt v. Heye* 23 How. Pr. 359; *Bayard v. Bank* 52 Penn. St. 232; a purchase of stock is protected though the transfer be unauthorized: *Prall v. Tilt* 28 N. J. Eq. 479; *Turnpike Co. v. Ferree* 17 id. 117; *Hunterdon Bank v. Nassau Bank* id. 496; *Bank v. McElrath* 13 id. 26; trover lies for conversion of stock: Story's Eq. Jur. § 717; *Cousland v. Davis* 4 Bosw. 619; *Ayres v. French* 41 Conn. 151; *Fisher v. Brown* 104 Mass. 259; *Freeman v. Harwood* 49 Me. 195; *Insurance Co. v. Dalrymple* 25 Md. 267; *Savage v. Smythe* 48 Ga. 562; *Kuhn v. McAllister* 1 Utah 273: 96 U. S. 87; *Anderson v. Nicholas* 28 N. Y. 600; *Monk v. Graham* 8 Mod. 9; *Neiller v. Kelley* 69 Penn. St. 403; equity only interferes to decree the specific delivery of chattels where the remedy at law is utterly inadequate, or where there is a *pretium affectionis:* 1 Story's Eq. Jur. §§ 708, 709, 718, 719, 724; Fry on Spec. Perf. § 30; which is unlikely to be the case where stock certificates are the chattels bought: *Atkins v. Gamble* 42 Cal. 100; *Ross v. U. P. Ry.* 1 Woolw. 26; equity will not interfere against one who makes a *bona fide* purchase of the legal estate in realty for a valuable consideration, without notice of the adverse title, if he avails himself of the defense at the proper time and in the proper way: *Newton v. McLean* 41 Barb. 285: *Rexford v. Rexford* 7 Lans. 6; *Beal v. Miller* 1 Hun 390; *Grosvenor v. Allen* 9 Paige 74; *Russell v. Petree* 10 B. Mon. 184; it is not bound to enforce strict legal rights but

will protect an equitable title when justice requires : *Lewis v. Lyons* 13 Ill. 117.

GRAVES, C. J. This appeal is brought by complainant against the dismissal of his bill. The subject of controversy is the right to twenty-five shares of stock in the defendant corporation. On the books of the company the title stands in defendant Robertson ; but complainant insists that the actual ownership is with him. His equity, as his bill asserts it, entitles him to a decree that the stock is now held for his benefit, and that Robertson surrender the certificates to the company, and that the latter thereupon cancel them and deliver in their stead to complainant regular certificates in his name. He claims that, such is his situation, the stock possesses, as regards himself, a special and peculiar value and one very far beyond any price ascribed to it in the market, and that the loss of it would entail a damage to him which no authorized measure at the common law would come near satisfying.

The scheme of the bill does not appear to be objectionable. *Cushman v. Thayer Manufacturing Jewelry Co.* 76 N. Y. 365. But no essential departure from it would be regular. The complainant has judged for himself what case he would assert and against whom he would prosecute it, and he has seen fit to claim an arrest of the certificates issued to Robertson and to implicate no one beside the latter and the railway company as defendants. Under no circumstances could relief be granted depending on a different case and other or additional parties. The suit is not for redemption, or against the Savings Bank, and the principle of *Fowle v. Ward.* 113 Mass. 548, cannot apply.

Early in 1874 the Detroit Car Works, a domestic manufacturing corporation, purchased and became owner of the stock. The last-named corporation was chiefly controlled and managed by complainant and Edward C. Walker and Dr. George B. Russel and his son George H. Russel. Dr. Russel and members of his family owned a large portion of its stock, and complainant and E. C. Walker a large share of the remainder. E. C. Walker had been the president, but

in 1875 the complainant occupied the position. During the years it remained on its feet and up to September, 1875, George H. Russel was the secretary and treasurer, and Dr. Russel was the general business agent or managing director. Whether he received a specific appointment from the board of directors does not appear and is not material. He was allowed to appear and act in that character for years, and so far as can be gathered from the evidence, without a syllable of disapprobation from any member of the corporation. His services were invariably accepted and their benefits appropriated. The facts necessitate the conclusion that he had the full authority of a managing director and that his son George H. Russel was vested with the double powers of secretary and treasurer. All these authorities were lodged with these two persons.

On occasion of the original purchase by the car works of this stock from the defendant corporation only twenty of the twenty-five shares were put in the name of the Car Works. For some purpose not very clearly explained the certificate for five of the shares was issued in the name of E. C. Walker. But he claimed no individual interest and indorsed the certificate in blank for the benefit of the company and passed it over to Dr. Russel or to George H. Russel; and both certificates were in charge of the latter as secretary and treasurer. The Car Works became heavily indebted, and in the spring of 1875 its obligations had become exceedingly urgent and embarrassing. Complainant and Dr. Russel were each personally responsible for a large amount, and failure of the corporation was considered imminent. Some time later and prior to the 9th of August Dr. Russel called on his son, the secretary and treasurer, for the certificates covering the twenty-five shares of stock, and the latter in compliance with his request made the usual blank endorsement in the certificate for the 20 shares and then handed both certificates over to him. The endorsements were blank assignments and powers of attorney and those on the back of the certificate issued in the name of E. C. Walker bore his signature, and those on the back of the other were subscribed by the secretary and treasurer

of the Car Works in this form : "Detroit Car Works, George H. Russel, Treasurer." From that time forward these documents remained estreated from the files and records of the corporation and no entry appears to have been made or any report given to the directors in relation to them.

For some time prior to August 9th the Car Works had carried on extensive financial dealings with the Detroit Savings Bank, and in conducting the business the former had acted exclusively through Dr. Russel. At that date a check drawn by the Car Works through its treasurer on another bank and in favor of the Savings Bank was returned dishonored, and in order to cure this miscarriage and cover the default for the time being, the doctor pledged the certificates with the Savings Bank. His purpose in withdrawing the certificates from the other paper assets of the corporation was to convert the stock to his own use, and when lie pledged the certificates he gave the Savings Bank to understand that they were his private property. In view of his position and the scope of his power they were not necessarily out of place in his hands and no one ought to be prejudiced in consequence of his secret intentions. On the 9th of September, 1875, and whilst the certificates were in this predicament, the Car Works corporation made a general assignment for the benefit of its creditors to one Samuel T. Nelson, and it covered whatever interest was still retained by the corporation in the twenty-five shares of stock. Neither the assignee nor any other person connected with the affairs of the corporation, except Dr. Russel and his son, the secretary and treasurer, seems to have had any knowledge at this time where the certificates were or what their *status* was. And this same obscurity seems to have continued down to 1879, at which time the complainant accidentally discovered the certificates lying in the bank.

Some few weeks after the assignment Dr. Russel substituted at the bank an obligation running to himself for the prior one and at the same time continued the certificates in pledge for the substituted obligation. In the month of January, 1877, the entire assets of the Car Works were sold

by the assignee at public auction, and among the sales to complainant was "all the interest which the Detroit Car Works may have in and to twenty-five shares of the stock of the Detroit Transit Railway." As before suggested neither the assignee nor complainant nor any other person connected with the Car Works except Dr. Russel and his son George H. knew or suspected what had become of the certificates. Dr. Russel was present and kept silent. The consideration which complainant bid was barely nominal. In the following December he received a bill of sale covering his purchase. The obligation substituted by Dr. Russel continued unpaid and the certificates were retained in pledge. In 1879 the complainant being in the bank on other business casually discovered them and informed the vice-president and cashier that he owned them, and he called for their surrender. The officers stated to him that Dr. Russel had pledged them as his property to secure an obligation to the bank which was long past due and unpaid and that they would not be given up unless the debt was satisfied and would not be delivered to complainant without an order for that purpose from the pledgor. Whether as between complainant and the bank the latter failed in its duty is not at all material. The bank is not a party and nothing is brought home to it which can affect the conscience of either defendant.

The claim that complainant notified the railway company of his right and desired that no recognition should be extended to conflicting pretensions cannot be admitted. The fact is not proved. The complainant declines to affirm it. As a matter of reasoning he thinks he must have given notice, but he swears to no recollection of having done the act. Moreover, he proves by the very officer to whom the notice would regularly have been given, the officer whose duties related to the transfer of stock (*Bridgeport Bank v. N. Y. & N. H. R. R. Co.* 30 Conn. 231, 271), that he had not been notified and had no knowledge of complainant's claim.

January 30, 1880, Doctor Russel made sale of the shares to his son, Henry Russel. They were still in pledge. The

price paid was about $2600 and it was a full one. The form of the transaction was this : Henry took up a note made by the Car Works, and on which his father and mother were endorsers, and paid the bank the necessary amount to redeem the certificates and his father ordered the bank to deliver them to Henry. The assignments and powers of attorney were still in blank and no transfer had taken place on the books of the railway company. Henry Russel in making this purchase and several others of like kind acted partly for himself and partly for James McMillan. The latter supplied a chief portion of the funds and expected to receive the entire interest eventually. The arrangement was not made expressly definite. Each party seems to have felt satisfied that the other would comply with his expectations on final adjustment. McMillan had no part in the negotiations and it was not publicly known that he was interested in the purchases being made by Russel. It was understood between them that the stock obtained should be taken in the name of Robertson, because if it were known that McMillan was engaged in buying it would be likely to advance the price and might possibly defeat the design, which was to secure an amount sufficient to enable the holder to wield a decided influence in the management of the corporation.

It does not appear that the arrangement between McMillan and Henry Russel applied to any specific shares of stock or was intended to be confined to any particular items whatever. Neither does it appear that the history or title of any given share or shares was talked of or referred to between them. The desire of McMillan was to get stock in the company in sufficient quantity without reference to the incidents of its present ownership or the character of its past environments.

The cashier in giving up the certificates on Dr. Russel's order followed the instructions of the board of directors and McMillan was a member of the board. Some evidence was offered to make out that the vice-president of the bank consulted the directors concerning complainant's claim, and that McMillan through that medium received notice of

sufficient facts to stain the purchase as to his interest with bad faith. But the evidence relied on to cause that result is too uncertain and too far-fetched to be acted on. It affords no basis for anything more substantial than conjecture.

February 2, 1880, Henry Russel and his father called at the proper office of the railway company with the certificates bearing the endorsements previously described and the secretary on request filled up the blanks and issued new certificates to defendant Robertson and delivered them to. Henry Russel.

These propositions are admitted : *First*, that possession of certificates of corporate stock which bear the proper endorsements is *prima facie* evidence of ownership, and that the holder for value without notice of prior equities obtains a perfect title as against such equities; *second*, that if the rightful owner has invested another with the usual evidence of title or an apparent authority to dispose of the stock, he will be estopped from making any claim against an innocent purchaser dealing on the faith of such apparent ownership or right of disposal.

In addition to the authorities cited for these positions by the learned counsel who concedes them, the following will be found to give various illustrations of the doctrine, and to explain its application under varying circumstances. A portion of the cases will moreover be found to have a very direct bearing on some of the particular incidents which mark the transactions in controversy. *Goodwin v. Robarts* H. L. 1 App. Cas. 476 : 16 Eng. 119 ; *The Horlock* 2 Prob. Div. 248 : 21 Eng. 626 ; *Mandlebaum v. North American Mining Co.* 4 Mich. 465 ; *Black v. Zacharie* 3 How. 483 ; *Bank v. Lanier* 11 Wall. 369 ; *Johnston v. Laflin* 103 U. S. 800 ; *U. S. v. Vaughan* 3 Binn. 399 ; *U. S. v. Cutts* 1 Sumn. 133 ; *Continental Nat. Bank v. Eliot Nat. Bank* 7 Fed. Rep. (Mass.) 369 : 12 Rep. 35 ; *Fatman v. Lobach* 1 Duer 354 ; *Commercial Bank of Buffalo v. Kortright* 22 Wend. 348 ; *Titus v. President etc. G. W. Turnpike Road* 61 N. Y. 237 ; *Salisbury Mills v. Townsend* 109

Mass. 115; *Pratt v. Taunton Copper Co.* 123 Mass. 110; *Hoppin v. Buffum* 9 R. I. 513; *Finney's Appeal* 59 Penn. St. 398; *Wood's Appeal* (Pa.) 10 Rep. 125; *Smith v. Crescent City Co.* 30 La. Ann. 1378; *Winter v. Belmont Mining Co.* 53 Cal. 428; *Fraser v. Charleston* 11 S. C. 486; *Strange v. Houston & Texas C. R. R. Co.* (Texas) 10 Rep. 28; *Broadway Bank v. McElrath* 13 N. J. Eq. 24: *Bank v. Bank* 17 N. J. Eq. 496; *Prall v. Tilt* 28 N. J. Eq. 483; *Merchants' Bank v. Richards* 6 Mo. App. 454; *Conant v. Seneca County Bank* 1 Ohio St. 298; *Elwell v. Dodge* 33 Barb. 336; *Moore v. Met. Bank* 55 N. Y. 41; *Duke v. Cahawba Nav. Co.* 10 Ala. 82; *Ross v. S. W. R. R. Co.* 53 Ga. 514; *City of Covington v. Covington & Cincinnati Bridge Co.* 10 Bush 69; *Baltimore City Passenger Ry. Co. v. Sewell* 35 Md. 238; *Scott v. Det. Y. M. So. Lessee* 1 Doug. (Mich.) 119; *Cahill v. Kal. M. Ins. Co.* 2 Doug. (Mich.) 124; *Walrath v. Campbell* 28 Mich. 111, 119, 120; *Jhons v. People* 25 Mich. 499; *Allen v. Citizens' Steam Navigation Co.* 22 Cal. 28; *Hoag v. Lamont* 60 N. Y. 96; *Driscoll v. W. B. & C. M. Co.* 59 N. Y. 96; *Holbrook v. N. J. Zinc Co.* 57 N. Y. 616; *Lyndeborough Glass Co. v. Mass. Glass Co.* 111 Mass. 315; *Lohman v. N. Y. & E. R. R. Co.* 2 Sandf. 39; *Corn Exchange Bank. v. Cumberland Coal Co.* 1 Bos. 436; *Smith v. Hull Glass Co.* 9 E. L. & E. 442.

Whether, as between the Car Works and Dr. Russel, the latter had authority to sell the twenty-five shares of stock or any of them is not a material question on this record. It may be admitted that he did not have it. The important subject of inquiry is whether the corporation permitted him to appear as owner or at all events as competent to dispose of the property as an owner might. That he was in fact the general business agent of the corporation and in its exterior affairs its financial manager and representative, is placed beyond question by the evidence, and it is not pretended that he usurped any authority or carried his activity to an extent or into channels forbidden to him, nor is it pretended that the public or any portion of it was cautioned

at any time to distrust his competency. The complainant, together with all the others, seems to have acquiesced in the doctor's construction of the scope of his own authority. His attitude and conduct were that of a man empowered to handle and turn the paper assets of the company in such manner as its interests in his judgment seemed to require, and the governing body looked on and made no objection. The world was entitled to assume that his authority was co-extensive with his course of action, and that he was clothed with all power necessary to dispose of such paper assets as were in shape for disposal. The certificates of stock were in this category. *Taff Vale Ry. Co. v. Giles* 2 El. & Bl. 822: 22 E. L. & E. 202; *Moore v. Metropolitan Ry. Co.* L. R. 8 Q. B. 36: 4 Eng. 203.

The certificate for the twenty shares issued directly to the Car Works was endorsed, as we have seen, by the treasurer and in this form: "Detroit Car Works. George H. Russel, Treasurer." It is objected that the treasurer was not able to transfer the certificate without authority from the board of directors, and that the present endorsement was irregular upon its face. Grant that as between the corporation and the treasurer, or between the corporation and one holding with notice or not in good faith, that the solitary act of the treasurer would not divest the title. But that is not the question which presses. Concede that complainant has every right which the corporation had and also every right which its assignee acquired, can he assail the title of a purchaser for value on the ground that the treasurer acted without proper authority in making the endorsement? I think not. The form of endorsement was regular. It is not contended, in terms at least, that an authenticated order or resolution of the board of directors was required to appear, and there is no authority for such a position. The law is clearly settled otherwise, as will appear from many of the cases cited.

The purchaser has a right to assume that the act of endorsement, being by the official whose functions would naturally and reasonably include it, is well grounded and

preceded by all needful circumstances, and it is not incumbent on him to seek a verification of the assumption by an inspection of the corporation books before the consummation of his purchase. The law is equally settled that endorsements in blank are perfectly regular. See the authorities referred to.

Was the treasurer the proper official to endorse in this case? The question can be answered only in one way. His station implied that the act pertained to his- functions and there seems to have been no other position whose duties covered it, and there is no proof to change or modify the natural implication. Third persons were authorized to act upon the endorsement as an authentic proceeding of the corporation. *Fay v. Noble* 12 Cush. 1; *Lester v. Webb* 1 Allen 34; *Conover v. Ins. Co.* 1 Comst. 290; *Hutchings v. Ladd* 16 Mich. 493; *Merchants' Bank v. State Bank* 10 Wall. 604; *Carpenter v. Farnsworth* 106 Mass. 561.

Through the act of the treasurer of the Car Works and the omission of complainant and other officials to interfere, Dr. Russel was allowed to appear clothed with all the rights of ownership or at least with the same power of disposal that an absolute owner would possess; and if this appearance was fallacious and untrue, its continuance down to the time of the assignment was owing to the fault of the company and of complainant as its president, and its continuance thereafter, and until the sale to Henry Russel when the doctor took advantage of it, must be attributed to the fault or want of care of complainant's vendor, the assignee, and of complainant himself, and as between him and another innocent of fault the latter ought not to suffer. *Orleans v. Platt* 99 U. S. 676; *In re Marseilles Extension Railway Co.* L. R. 7 Ch. App. 161: 1 Eng. 490. The present *status* of the title, if judged by appearances, is true and honest, and supposing it to be so, the right is not separable from the actual arrangements.

But the complainant attempts to impeach the title lodged with Robertson, and he assails its legality and good faith. In so doing he assumes the burden of proof; the general

rule being that in every case in which there is *prima facie* evidence of any right existing in any person, the burden of proof is always on the person or party calling such right in question. *Banbury Peerage Case* 1 Sim. & S. 153; *Greenwood v. Lowe* 7 La. Ann. 197; 2 Whart. Ev. § 1248. In order to fulfil the task so incumbent on him and sustain the case alleged by his bill he has called Henry Russel, his father and brother and the cashier of the savings bank and the secretary of the defendant corporation and several others. But the testimony does not establish that the purchase by Henry Russel was in bad faith. It fails to prove that he had notice of any infirmity in his father's title or right of disposal. On the contrary he expressly denies such notice and the testimony of the cashier of the Savings Bank and of the secretary of the defendant corporation tends to corroborate him. The court is however reminded by complainant's counsel that it was necessary to rely on these witnesses because they alone were cognizant of the real facts, and that they are reluctant witnesses and testify grudgingly and with as much reserve as possible. Let this be admitted. It might justify special indulgence in the mode of examination and be entitled to influence the judgment to be formed on the testimony. But it cannot supply the lack of proof, nor convert distinct negatives into affirmations or admissions.

No doubt the case contains elements very liable to excite suspicion that the parties in interest had speculative grounds for suspecting that the doctor's title was subject to question; but suspicion is not a foundation on which the court can reverse the dismissal of a bill and overturn a title which is *prima facie* regular. Story Eq. Jur. § 400*a*; *In re Marseilles Extension Ry. Co.* supra.

Upon the whole case, and after a thorough consideration, it is my opinion that the decree below should be affirmed with costs.

The other Justices concurred.