## DENE SHIPPING CO. v. TWEEDIE TRADING CO.

(Circuit Court of Appeals, Second Circuit. December 5, 1905.)

No. 27.

1. SHIPPING—LAWFUL CARGO UNDER WEST INDIAN CHARTER—ASPHALT.

Asphalt is "lawful cargo," under a charter which includes the West Indies; and it is the duty of the owner, in order to render the vessel seaworthy, to fit her for the proper carriage of such cargo by lining, where her construction is such as to require it, and in this respect there is no difference between a time charter and a voyage charter.

2. SAME—SEAWORTHINESS—LINING FOR ASPHALT CARGO.

A vessel under a time charter for a voyage to South American and West Indian ports and return, which provided that she should be in every way fitted for the service and employed in carrying lawful merchandise, was required to load a cargo of asphalt for the return voyage. The vessel was fitted with permanent battens, with spaces between them, and not being lined a large quantity of asphalt was forced between and behind the battens and they had to be taken off in order to remove it. The owners refusing to bear this expense, the work was done by the charterer. Held, that such work was not within the duty of the charterer to clean the vessel, but was made necessary by her unseaworthiness for the carriage of the cargo, and that the charterer was entitled to an offset against the charter hire for the expense of the removal, and the time lost.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, § 164.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 133 Fed. 589.

J. Parker Kirlin, for appellant.

Charles S. Haight, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The libel was filed to recover a balance of hire, claimed to be due the owners of the steamer Myrtledene from the respondent under a time charter. The respondent set off certain charges against this balance. The court held that the respondent was entitled to said offsets to the amount of $2,491.82, and decreed that the amount to be paid to the libelant, after such deduction, was $320.76. From this decree the libelant appeals. There is no dispute as to the balance due under the charter, provided the respondent is not entitled to make said set-off.

The first claim of offset, namely that for the cost of erecting a bulkhead at Trinidad, for the protection of the vessel against the pressure of the asphalt, is not objected to and will not be discussed. There were two charter parties. The first, executed on December 10, 1902, provided for "one round trip South America, not south of River Plate, option of West Indies en route," and the owners agreed that the steamer should be "on her delivery ready to receive cargo, and tight, staunch, strong, and in every way fitted for the service, * * * to be employed in carrying lawful merchandise * * * between ports within the above limits." The Myrtledene, having carried a cargo of coal from Norfolk to Trinidad, was then ordered to load a cargo of asphalt

for Philadelphia. When her master reported to the asphalt company at Trinidad, its manager told him that his vessel was not in a fit condition to receive asphalt, and that the ship should be lined, and the master took the cargo with a statement from the manager that it was taken at his (the master's) risk.

The Myrtledene was not in a fit condition to carry asphalt without being lined. She was fitted up with heavy plank battens, permanently riveted to her side, close together, but with crevices between, and running horizontally from frame to frame, so as to leave a space between the skin of the ship and the battens some four or five inches deep. Where vessels with such permanent battens are to take a cargo of asphalt, it is customary to close the crevices between the battens with wood, by running planks lengthways over or between the battens. This is called lining. The newer type of boats built within the last ten years are provided with cleats so that the battens can be shipped and unshipped as required. In such vessels, when a cargo of asphalt is to be loaded, the battens are taken down and the ship is whitewashed, in order to prevent the asphalt from sticking to the sides. The master of the Myrtledene did not have her lined, but merely had her whitewashed wherever he could get whitewash in. As a result the pressure squeezed the asphalt in between the battens, so that some 50 tons became permanently wedged behind them, reducing to that extent the capacity of the vessel and rendering her hold unfit for the carriage of perishable cargo. A dispute having arisen between the parties as to who was bound to bear the expense of removing the asphalt, and, the owners having refused to do it, the charterer undertook the work, and now offsets the charges therefor, and for time lost, against the charge for charter hire.

It is unnecessary to consider the questions involved as to the redelivery of the vessel, the cables between the parties, or the marginal insertion in the renewal charter. The decisive question is as to the seaworthiness of the steamer. Under the original charter the owners agreed to provide a seaworthy vessel, that is, one which should be in every way fit to render the services undertaken, namely, the carriage of any lawful merchandise. Asphalt is "lawful merchandise" in charters including the West Indies. Dene S. S. Co. v. Munson (D. C.) 103 Fed. 963.

Appellant contends that these offsets should not have been allowed because, inter alia, they are for cleaning the vessel, which was the duty of the charterer. But the uncontradicted testimony is to the effect that the duty of the charterer as to cleaning does not include the removal of any of the permanent structure of the ship, which was necessary in this case in order to take out the asphalt.

Appellant further contends that it is customary for the time charterer to provide the fittings necessary for special kinds of cargo. The evidence on this subject is somewhat indefinite, but it appears from the testimony of one of appellant's own witnesses, that such custom relates to the separation of different kinds of cargoes, and that the duty of paying for this separation is imposed upon the charterer when it is necessary for the protection of the cargo. The evidence does not establish a custom that the charterer shall provide fittings for the protection of the

ship against the requirements of a lawful cargo. It is the duty of the owner to take such measures as pertain to the sufficiency of the ship for the service required, and as are necessary for carriage of the cargo with safety to the ship, and to pay for damage done to it by cargo, due to the failure of the owners to properly protect the ship. Dene S. S. Co. v. Munson, supra.

It is further contended that no obligation rested on the owners to provide means to enable the charterer to remove his cargo in the most expeditious manner. But the question of the removal of cargo is only secondary in this case. The owners, having failed to fulfil their original obligation to make the vessel seaworthy, are bound to bear the expense resulting from such failure.

Appellant seeks to make a distinction between time charters, such as the one in question, and voyage charters. We fail to see what bearing this can have upon the fundamental question in this case, which is that of seaworthiness. Mr. Justice Day, delivering the opinion of the Supreme Court of the United States in The Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65, says:

"In the case of The Silvia, 171 U. S. 462, 19 Sup. Ct. 7, 43 L. Ed. 241, Mr. Justice Gray said: 'The test of seaworthiness is whether the vessel is reasonably fit to carry the cargo which she has undertaken to transport.' This is the commonly accepted definition of seaworthiness. As seaworthiness depends not only upon the vessel being staunch and fit to meet the perils of the sea, but upon its character in reference to the particular cargo to be transported, it follows that a vessel must be able to transport the cargo which it is held out as fit to carry, or it is not seaworthy in that respect."

The agreement of the owner is that the vessel shall be fit for the services in which it is employed, including therein fitness for the carriage of such reasonable and proper cargo as she may take on board. In this case the owners agreed under the charter party that the vessel should be "in every way fitted for the service * * * to be employed in carrying lawful merchandise." They failed to carry out this agreement, and the expenses of the charterer, and deduction for time lost in repairing the resulting damage were properly offset against the charter hire.

The decree is affirmed, with interest and costs.