THE BENJAMIN NOBLE.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1917.)

No. 2907.

1. SHIPPING ⬅121(2)—LIABILITY FOR LOSS OF CARGO—"SEAWORTHINESS"—OVERLOADING.

Under the accepted rule that to constitute "seaworthiness" a vessel must be reasonably fit to carry the cargo which she has undertaken to transport, seaworthiness must be tested by the facts and circumstances of each particular case, and the capacity of the vessel and the tonnage of her cargo may be vital factors.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaworthy.]

2. SHIPPING ⬅209(3)—LIMITATION OF LIABILITY—SEAWORTHINESS—BURDEN OF PROOF.

In a proceeding for limitation of liability against a claim for loss of cargo, it is incumbent on the shipowner to prove that the vessel was seaworthy at the beginning of the voyage or that due diligence had been

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

used to make her so, and in that respect there is no distinction between a common carrier and a private carrier.

3. SHIPPING ⬡➡141(4)—SEAWORTHINESS—EXCEPTIONS IN BILL OF LADING.
    A provision of a bill of lading excepting dangers of navigation cannot be permitted to affect the requirement of seaworthiness under Harter Act Feb. 13, 1893, c. 105, § 2, 27 Stat. 445 (Comp. St. 1916, § 8030).

4. SHIPPING ⬡➡22—REPRESENTATION BY AGENTS—IMPLIED AUTHORITY.
    A corporation shipowner is charged with knowledge of the extent of the power usually exercised by its ship manager, and is bound by his acts within such limits, even though such authority had not been given in express terms when he was employed.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

In the matter of petition in admiralty of the Capitol Transportation Company, as owner of the steamer Benjamin Noble, for limitation of liability. From a decree denying limitation and establishing the claim of the Cambria Steel Company, petitioner appeals. Affirmed.

For opinion below, see 232 Fed. 382.

F. S. Masten, of Cleveland, Ohio, and Charles R. Hickox, of New York City, for appellant.

Lewis Adler & Laws, of Philadelphia, Pa., and Sherwin A. Hill, of Detroit, Mich. (Francis S. Laws, of Philadelphia, Pa., of counsel), for appellee.

Before WARRINGTON, MACK, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. The steamer Benjamin Noble and her entire crew and cargo were lost on Lake Superior in April, 1914. The Cambria Steel Company, as owner of the cargo, filed two libels in personam against the owner of the Noble, the Capitol Transportation Company, one in the District Court of the United States for the Eastern District of Pennsylvania, and the other in the District Court of the United States for the Northern District of Illinois, to recover the value of the cargo so lost. Later the Capitol Transportation Company, appellant herein, filed libel and petition in the court below, praying limitation of liability, and claiming under admiralty rule 56 (29 Sup. Ct. xlvi) the right to contest its liability to any extent whatever. Appellant, in lieu of appraisal and bond, elected to transfer all that was recovered from the Noble, to wit, a lifeboat and spare wheel, and its interest in the wreck if the same should be salved. Monition having issued, the Cambria Steel Company, appellee herein, filed its claim against appellant for loss of cargo, consisting of 2,951$^{840}/_{2240}$ tons of steel rails there stated to be of the value of $96,418.85. On the same day appellee filed answer setting up among other things: Specific denial that appellant is entitled to limitation of liability; a contract whereby appellant agreed to transport and carry for appellee in one shipment a cargo of 3,000 tons of steel rails from the port of Conneaut, Ohio, to the port of Superior, Wis., at 80 cents per gross ton, the dangers of navigation, fire and collision excepted; and allegations to the effect that appellant with knowledge of the load the steamship could safely carry, but without any knowledge in that behalf on the part of appellee, offered to furnish the steamer Noble for the service in

contemplation, and upon its own responsibility afterwards loaded the steamer with the tonnage of rails lost, as stated, and thereupon undertook to carry the rails safely from the initial to the destined port mentioned. Upon trial, in which nearly all the witnesses testified before the court, decree was entered denying to appellant its claim to limitation of liability, and allowing recovery in favor of appellee and against appellant for the stipulated value of and damage to the cargo in the sum of $94,199.51, with interest at 5 per cent. per annum from April 28, 1914. The case is reported under the title of the Benjamin Noble, 232 Fed. 382. The decree is based on a finding that from the beginning of the voyage and within the knowledge of the owner the ship was unseaworthy in the sense that she was overloaded.

We see no sufficient reason to disturb this finding unless as counsel claim it was reached through erroneous application of the law. We cannot think it necessary to refer to all the criticisms of counsel; but we may, for illustration, refer to some:

[1] (1) It is said that the trial court held the Noble "overloaded on a basis unknown in law." The accepted definition of seaworthiness is whether the vessel is "reasonably fit to carry the cargo which she has undertaken to transport" (The Southwark, 191 U. S. 1, 9, 24 Sup. Ct. 1, 48 L. Ed. 65); and this test of course is one of fact, not of law. Seaworthiness is a relative term (The Thames, 61 Fed. 1014, 1022, 10 C. C. A. 232 [C. C. A. 4]), and usually involves an inquiry into the condition or capacity of the vessel, in connection with the nature or tonnage of the cargo; as, for instance, it has been held that the condition of a vessel made it unseaworthy for carrying meat (The Southwark, supra); likewise as to the carriage of flour (The Thames, supra); as to the carriage of grain (The Fitzgerald, 212 Fed. 678, 683, 129 C. C. A. 214 [C. C. A. 6]); and as to the carriage of asphalt (Dene Shipping Co. v. Tweedie Trading Co., 143 Fed. 854, 856, 74 C. C. A. 606 [C. C. A. 2]). This is true also of a vessel which is improperly ballasted with reference to the load it carries (The Whitlieburn [D. C.] 89 Fed. 526, 528, and Sumner v. Caswell [D. C.] 20 Fed. 249, 252, 253, decisions by Judge Addison Brown); so as respects an improper distribution or loading of the cargo (The Oneida, 128 Fed. 687, 689, 63 C. C. A. 239 [C. C. A. 2]; The G. B. Boren [D. C.] 132 Fed. 887, 888; The William Power [D. C.] 131 Fed. 136, 137); or overloading a particular part of a vessel (The Kate [D. C.] 91 Fed. 679, 680, per Judge Addison Brown). It must follow, if it is not obvious, that the capacity of a vessel and the tonnage of its cargo are likewise vitally related as respects the fact of unseaworthiness. In Cincinnati Firemen's Mutual Ins. Co. v. May, 20 Ohio, 212, 226, Chief Justice Hitchcock said: "That the overloading a vessel renders her unseaworthy, there can be no doubt." This is in accord with the rule laid down by Earle, C. J., in Foley v. Tabor, 2 F. & F. 663, 664, 665, 671, 672, by the Lord Chancellor, in Steel v. State Line Steamship Co., 3 App. Cas. 72, 77, and by Lord Wensleydale in 14 Moo. P. C. C. 471, 492, 497, 2 Arnould on Marine Ins. (7th Ed.) p. 814, § 717, and Parsons on Maritime Law, p. 137; and no decision to the contrary has come to our attention; indeed, the same rule is clearly implied in the provision of the Harter Act whch **requires** the owner to make his vessel

"seaworthy and capable of performing her intended voyage" (27 Stat. 445, § 2). It results that seaworthiness must be tested by the facts and circumstances of each particular case (see in addition to cases above cited Ins. Nav. Co. v. Farr & Bailey Mfg. Co., 181 U. S. 218, 224, 21 Sup. Ct. 591, 45 L. Ed. 830); and the advantages derived in the court below through observation of the witnesses cannot be overlooked.

[2, 3] (2) Concerning the finding of unseaworthiness, it is objected that the trial court erroneously placed upon appellant the burden of proving that the ship was seaworthy with respect to her load; and it is said that this is so whether appellant be treated as a common carrier or as a private carrier. Counsel admit that the objection is of no great consequence in view of the fact that the record has been made; and as we interpret the record the burden was not in fact placed on appellant. True, in the course of the opinion, the trial judge stated that, "while the law places the burden of proving seaworthiness upon the petitioner in a case of this kind," yet he also stated that he "directed the claimant (appellee) to put in its full case, that then the petitioners (appellant) put in their case, and that then the claimant put in its rebuttal, and that course was pursued" (232 Fed. at page 389); and it conclusively appears that the objection is immaterial, since the court further found (390): "But there can be no question of doubt in this case, as the shipper by direct and convincing evidence has proved the unseaworthiness of the carrier." Apart from this, and upon the theory that the Noble was a common carrier, it was "incumbent upon the shipowner (appellant) to prove that the vessel was seaworthy at the time of beginning the voyage, or that due diligence had been used to make her so" (The Wildcroft, 201 U. S. 378, 386, 26 Sup. Ct. 467, 468, 50 L. Ed. 794); and even if in considering the testimony the trial judge had been in doubt as to the ship's seaworthiness, the doubt should have been resolved in favor of the shipper, for the evidence clearly shows that appellee did not use due diligence to furnish a seaworthy vessel with respect to the load attempted to be carried (The Wildcroft, supra, at page 389 of 201 U. S., at page 467 of 26 Sup. Ct., 50 L. Ed. 794). The fact that the bill of lading contained a provision excepting "dangers of navigation, fire and collision" is not important. As Mr. Justice Day said in The Southwark, supra, 191 U. S. at pages 16, 17, 24 Sup. Ct. at page 6, 48 L. Ed. 65:

"To permit the stipulations of this bill of lading to cut down the statutory requirements of section 2 of the Harter Act would be to allow the parties to enforce a contract in violation of the positive terms of the statute."

It is, however, urged that the Noble was not a common carrier, but a private carrier, since the whole cargo belonged to appellee and the boat was not running on regular routes nor held out as a common carrier; and consequently that she was not subject to the rule pointed out touching the burden of proof. Conceding, though it is not necessary to decide, that the Noble was a private carrier, the position of appellant is not changed; for, as we have seen, the burden of proof was not cast upon appellant. Furthermore, we see no reason for distinction between a private carrier and a common carrier as respects the question or the proofs as to seaworthiness, since the obligation of each to

furnish a seaworthy boat is the same. Sumner v. Caswell, supra, 20 Fed. at pages 251, 252; The Planter, 19 Fed. Cas. No. 11,207a, 807, 808, C. C. per Circuit Judge (afterwards Mr. Justice) Woods; The Royal Sceptre (D. C.) 187 Fed. 224, 227.

[4] (3) It is contended that, if the vessel was lost through overloading to the extent of unseaworthiness, the overloading was brought about by the master without appellant's privity or knowledge, and so furnishes no reason for denying limitation of liability. We must regard this contention as ruled by the decision of this court in Great Lakes Towing Co. v. Transp. Co., 155 Fed. 11, 83 C. C. A. 607, 22 L. R. A. (N. S.) 769. It is a mistake to say that the master alone was responsible for the overloading. The corporation itself, through John A. Francombe, was cognizant of the overloading and in effect brought it about. It is stated in appellee's brief and without apparent contradiction that appellant's "only vessel property" was the steamer Noble; and this, with the further fact that appellant was in possession of the insurance proceeds, was conceded at the oral argument. These facts should be borne in mind in determining the relations between the appellant company and Francombe. It is clearly to be inferred from the evidence that Francombe was the sole manager of the steamer Noble; that appellant had employed him in that capacity; that he was invested with and he exercised the power of the corporation in selecting and employing the chief officers, such as the master and engineer, of the vessel, and in determining what contractual services the vessel should engage in; that he was held out by the company and was recognized by persons, such as brokers, dealing in respect of the ship and her services, as the person ultimately entitled in such matters to represent and bind the corporation. The initial arrangement for the carriage of the steel rails in question was held in abeyance until it received his ultimate approval; and even the master would not complete the loading of the rails until he first obtained the sanction and direction of Francombe. In short, it is not shown that final authority in the respects mentioned resided in any person except Francombe; and he may rightfully be treated as in fact the company's manager. Since the board of directors of the corporation must be presumed to have exercised a supervision over its business, the board is to be charged with knowledge of the extent of the power usually exercised by its ship manager and held to have acquiesced in his possession of such authority, even though it had not been given in express terms when he was employed as manager of the vessel. Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 650, 651, 22 Sup. Ct. 240, 46 L. Ed. 366; Walker v. Detroit Transit Ry. Co., 47 Mich. 338, 350, 11 N. W. 187. The language of Judge Severens in the Great Lakes Towing Case, supra, at page 21 of 155 Fed., at page 617 of 83 C. C. A., 22 L. R. A. (N. S.) 769, would therefore seem to be peculiarly apposite:

"The Mills Transportation Company, being a corporation, could act only through some agency. McMorran was the manager, and was vested with authority to make such contracts as this in behalf of the owner of the vessel, and the contract was the personal contract of the corporation, not in consequence of any principle peculiar to the maritime law, but by virtue of the common-law rules of agency."

Francombe sanctioned and in effect made the verbal contract of affreightment out of which the present controversy grew; and the contractual obligation so created was the personal contract of appellant. In our view of the evidence Francombe's knowledge that the steamer was overloaded is too clear for argument. It inevitably follows that this overloading took place with the privity and knowledge of appellant.

It is insisted, however, that even this is not enough to justify denial of limitation. Admittedly this view is opposed to the decision of this court in the Great Lakes Towing Case. This is true also of the decision in The Republic, 61 Fed. 109, 113, 9 C. C. A. 386 (C. C. A. 2); in The Annie Faxton, 75 Fed. 312, 313, 21 C. C. A. 366 (C. C. A. 9); in Benner Line v. Pendleton, 217 Fed. 497, 506, 133 C. C. A. 349 (C. C. A. 2); and in The Julia Luckenbach, 235 Fed. 388, 397, 148 C. C. A. 650 (C. C. A. 2), reversing decision below; also in Gokey v. Fort (D. C.) 44 Fed. 364, 365; Rudolf v. Brown (D. C.) 137 Fed. 106, 108, 109; and the same rule is recognized, though perhaps this was not necessary, in the decision of Richardson v. Harmon, 222 U. S. 96, 103 to 106, 32 Sup. Ct. 27, 56 L. Ed. 110, and in Butler v. Boston Steamship Co., 130 U. S. 527, 553, et seq., 9 Sup. Ct. 612, 32 L. Ed. 1017. It is said that these decisions are erroneous as regards the question of limitation, and consequently that the decision in the Great Lakes Towing Case should be reconsidered. The theory of this feature of the argument is that section 18 of Act June 26, 1884, c. 121, 23 Stat. 57 (Comp. St. 1916, § 8028), operated to repeal and supplant section 3 of Act March 3, 1851, c. 43, limiting the liability of shipowners (9 Stat. 635; Rev. Stat. § 4283 [Comp. St. 1916, § 8021]); in other words, that the purpose of section 18 was at least to eliminate from old section 3 the "privity or knowledge" clause. The same contention was made in this court in support of a petition for rehearing in the Great Lakes Towing Case and upon substantially the same argument as the one presented here; but rehearing was denied. It is stated that this question is pending in the Supreme Court in the case of Benner Line v. Pendleton, supra; but we are disposed to follow the decision in the Great Lakes Towing Case.

(4) Strenuous objection is made to the trial judge's estimate of the weight that should be accorded to some of the evidence concerning the overloading of the Noble, and of the credibility of some of the witnesses upon that subject and upon still other matters involved in the controversy. We need not recount all the objections. Counsel on both sides were alert and persistent in bringing out all facts and circumstances of seeming relevancy to the issues, and the court indulged counsel in this course to a liberal degree. At the close of the trial and when the demeanor of the witnesses and their testimony were fresh in mind, the judge delivered an oral opinion which shows that he had a full appreciation of the testimony. This opinion was subsequently reduced to writing and, apart from the introduction of citations, without change of any importance. In our view of the evidence we cannot accept the claims of appellant that some of the conclusions of fact reached by the trial judge are unsupported by the testimony, much less that they are opposed to the testimony. This would be to accept part of the testi-

mony, not the whole of it; it would be to substitute our estimate of credibility derived from the record for the impressions received by the judge who actually saw the witnesses and heard them testify. We are unanimous in the belief that no prejudicial error is shown as respects any of the conclusions of fact or law. The present opinion has been prepared in deference to the earnest contentions of counsel and in an effort to meet some of the more prominent contentions, rather than in the belief that a written opinion here is necessary.

The decree must be affirmed.