## THE ADDISON E. BULLARD.

(Circuit Court of Appeals, Second Circuit. January 31, 1923.)

No. 134.

1. **Shipping ⬅39—Charter of entire cargo space for voyage makes vessel private carrier.**

 Where by the terms of a charter the whole cargo space of the vessel was let to libelant for the voyage, the vessel was a private, not a common, carrier.

2. **Shipping ⬅42—Private carrier must furnish seaworthy vessel.**

 The obligation to furnish a seaworthy boat applies equally to private and common carriers, and where the entire cargo space was chartered for the voyage, the vessel owner is under obligation to use diligence to furnish a vessel fit and seaworthy.

3. **Shipping ⬅42—"Seaworthiness" defined as requiring vessel to be fit to carry particular cargo.**

 "Seaworthiness" depends, not only on the vessel being staunch and fit to meet the perils of the sea, but on its being fit to transport the particular cargo which it is to carry, and failure to furnish a vessel fit to carry the cargo contemplated is a breach of duty on the part of the owner.

 [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaworthy—Seaworthiness.]

4. **Shipping ⬅42—Sufficient dunnage required to make vessel seaworthy to carry linseed.**

 To make a vessel seaworthy for the carriage of bags of linseed, which were susceptible to damage by water, it is essential that the ship be provided with adequate dunnage to keep the cargo from con-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tact with any portion of the boat where water may reasonably be· expected to appear during the voyage, and a vessel must be lined inside, if the cargo is of such character as to require it, and the dunnage must be sufficient to prevent damage by leakage, where the vessel is likely to leak on the voyage.

**5. Shipping ☞58(2)—Evidence hela to warrant finding that·vessel was unseaworthy.**

Evidence of the broken condition of beams, resulting in weakened condition of the sides of the vessel amidships, and that the vessel leaked amidships, and that the character of the dunnage. was insufficient, in permitting bags of linseed to come in contact with the skin of the ship, *held* to warrant a finding ·that owner failed to furnish a seaworthy vessel.

**6. Costs ☞260(4)—Libelant entitled to damages for delay in addition, to interest and costs.**

Where a libel suit has been pending for more than four years, during which time the libelant has been. kept out of a considerable sum of money without reasonable excuse, under Rules of Court, rule 27, subd. 2, 3 (285 Fed. xiv), the libelant on appeal is entitled to damages in addition to interest.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Midland Linseed Products Company, Inc., against the schooner Addison E. Bullard, her tackle, etc.; Horace Turner, claimant. From a decree for the libelant, the claimant appeals. Affirmed, with interest, costs and damages.

The libelant is a corporation organized under the laws of the state of New Jersey. The libel alleges and the answer admits the jurisdiction of the court. The libelant chartered the schooner under a charter party dated October 13, 1917, made between it and Horace Porter, managing owner of the schooner and claimant herein. By the terms of the charter the claimant let the whole cargo space of the vessel to libelant.

The libelant chartered the schooner for a voyage from Buenos Aires to New York on the following terms: "The said vessel is believed to be tight, staunch, strong and in every way fitted for such a voyage. ⁕ ⁕ ⁕ It is agreed that the lay days for loading and discharging shall be as follows: Commencing from the time the captain reports himself ready to receive cargo, accompanied by underwriters' surveyor's pass to that effect, and cost of underwriters' certificate to be for charterers' account. ⁕ ⁕ ⁕ And should vessel not report for cargo on or before February 28, 1918, charterers have the option of cancelling this charter. The dangers of the seas, navigation, and errors, and the negligence of master and crew of every nature, always excepted. This charter is subject to all acts of Congress of the United States, excepting vessel and owners from liability for losses and for damages."

The schooner was loaded at Buenos Aires with libelant's cargo of 32,-809 bags of linseed, and one bill of lading was issued, which contained the following clauses: "Shipped in apparent good order and condition ⁕ ⁕ ⁕ 32,809 bags of linseed, weight 1,931,468 kilos, marked and numbered as per margin, and to be delivered in the like good order and condition at the aforesaid port of New York (all and every dangers of the seas, rivers, and navigation of whatsoever nature or kind excepted, including the negligence clause), ⁕ ⁕ ⁕ with all other conditions and exceptions as per charter party dated at New York, 13th day of October, 1917. ⁕ ⁕ ⁕"

The vessel reached New York in October, 1918. On discharge, a considerable part of the cargo was found to be damaged by water. It was stipulated, for the purpose of ascertaining damages, that 2,541 bushels sustained injury amounting to 40 per cent. of its value, and 1,444 bushels

injury amounting to 90 per cent. of its value. The fair and reasonable market value of linseed at the time of delivery was determined by arbitration to be $4 per bushel and the damages were accordingly computed on this basis.

The schooner was charged with liability on the ground that the vessel was unseaworthy at the commencement of the voyage: (1) In that several of the crossbeams beneath the 'tween-deck fore and aft of the main hatch were badly fractured and others sagged, thus weakening the sides of the vessel in that part of the ship and causing leakage during the voyage; (2) in that the cargo was not properly dunnaged away from the sides and ceiling and water tank of the ship, and consequently suffered damage from sea water in the sides and the bottom of the ship and from sweating of the water tank; and (3) in that open holes were left in the engine room floor, thus permitting water to flow down on to the cargo stowed underneath.

The court below entered a decree in favor of libelant in the amount of $11,463.78, with interest. The decree was entered on the ground that the vessel was unseaworthy and that the dunnage was inadequate.

Hunt, Hill & Betts, of New York City (Geo. Whitefield Betts, Jr., and Edna F. Rapallo, both of New York City, of counsel), for appellant.

Everett, Clarke & Benedict, of New York City (Herman S. Hertwig, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The question to be determined is whether the vessel was seaworthy at the commencement of the voyage. As preliminary to the determination of that question, the appellant suggests another. It argues that, as the vessel and her owners were private carriers the burden was on the libelant to make affirmative proof of negligence in failing to make the vessel seaworthy at the commencement of the voyage, and that libelant should prove conclusively that the alleged damage was the direct result of acts for which the vessel and her owners were responsible by the terms of the charter. The libelant, while not conceding that the vessel was a private carrier, contends that the appellant's conception of the law of the case is erroneous, and that, even if it should be held that the vessel was a private carrier, she would nevertheless be bound to show that she was seaworthy in all respects at the commencement of the voyage; and the libelant further claims that it really is a matter of no consequence in this case whether the vessel was a private or a common carrier, as the evidence as to her unseaworthiness is ample to sustain the burden if such burden existed.

[1] It is our opinion that the vessel is not to be regarded as a common carrier, inasmuch as the libelant occupied the whole ship. By the terms of the charter party the libelant was "to provide and furnish the said vessel with a full and complete cargo," and the owner and claimant agreed "on the freighting and chartering of the whole of the said vessel (with the exception of the cabin and necessary room for the crew, and storage of provisions, sails, and cables), or sufficient room for the cargo hereinafter mentioned" unto the libelant. This was sufficient to prevent the vessel from being considered a common carrier. The Fri, 154 Fed. 333, 83 C. C. A. 205; The Rokeby (D. C.) 202 Fed. 322.

[2] But in so far as the obligation of seaworthiness is concerned we think no reason exists for a distinction between a private and a common carrier. The obligation to furnish a seaworthy boat is the same in each case. Thus in Lyons v. Mels, 5 East, 428, 432 (1804), Lord Ellenborough said:

"That the implied warranty of seaworthiness is applicable to all carriers, whether common carriers or otherwise."

And in The Wildcroft, 201 U. S. 378, 388, 26 Sup. Ct. 467, 469 (50 L. Ed. 794), in which case, as in this, the ship was chartered for a full cargo, the court, in speaking of the obligation of making the ship seaworthy, said:

"The discharge of this duty is not left to any presumption, in the absence of proof. It is the condition precedent, compliance with which is required of the vessel owner in order to give him the benefit of the immunity afforded by the act. * * * It is not a case where there is either the necessity or propriety of resorting to presumptions. It is only when he has discharged the burden which the law imposes upon him, and shown that he has furnished a vessel fit and seaworthy, or has used due diligence to that end, that the law relieves him of the liability which he would otherwise incur. * * *"

There are other cases in which the same rule is laid down. See The Benjamin Noble, 244 Fed. 95, 156 C. C. A. 523; The C. R. Sheffer, 249 Fed. 600, 601, 161 C. C. A. 526.

[3] This brings us to the consideration of the question whether the vessel was seaworthy at the commencement of her voyage. Seaworthiness depends, not only upon the vessel being staunch and fit to meet the perils of the sea, but upon its being fit to transport the particular cargo which it is to carry. Unless it is able to transport that it is not seaworthy. And it may be seaworthy as to one sort of cargo and unseaworthy as to another. The Southwark, 191 U. S. 1, 24 Sup. Ct. 1, 48 L. Ed. 65; The Maumee (D. C.) 260 Fed. 862, 869; The Jeanie, 236 Fed. 463, 468, 149 C. C. A. 515; The Thames, 61 Fed. 1014, 10 C. C. A. 232.

[4] The cargo which this vessel was to carry consisted, as we have seen, of 32,809 bags of linseed. To make a vessel seaworthy for the carriage of bags of linseed which were susceptible to damage by water, it is essential that the ship should be provided with adequate dunnage to keep the cargo from contact with any portion of the boat where water may be reasonably expected to appear during the voyage. The Aspasia (D. C.) 79 Fed. 91; The Nith (D. C.) 36 Fed. 86. There must be sufficient dunnage in the bilges to protect the cargo in that part when the ship rolls. The Sloga, 10 Ben. 315, 22 Fed. Cas. 345, No. 12,955. So a vessel must be lined inside, if the cargo is of such a character as to require lining to protect it. Dene Shipping Co. v. Tweedie Trading Co., 143 Fed. 854, 74 C. C. A. 606. And the dunnage must be sufficient to prevent damage to the cargo from leakage, where the vessel is likely to leak on the voyage. The William Power (D. C.) 131 Fed. 136.

The vessel belonged to a class of boats constructed for the carriage of coal, lumber, and phosphate rock. Prior to the purchase of

the ship by the claimant, she had been principally used in the carriage of coal and phosphate rock. After her purchase, the claimant used her to carry coal and lumber. The claimant testified that during all the time he had this vessel under charter the only dry and perishable cargo she carried was this cargo of linseed. The testimony shows that, if a dry and perishable cargo is to be transported between North America and South America, it is necessary to have a strong and staunch vessel, and that it was only in war time that wooden vessels were used for the carriage of dry or perishable cargoes from South America to this country.

The vessel was a four-masted wooden schooner. She had three decks, an extended poop deck, a main deck, and a 'tween-deck. Her length was 218 feet 6 inches, her breadth 41 feet 9 inches, and her depth 25 feet 6 inches. The depth of her hold from the main deck to the ceiling was 19 feet 11 inches; from the poop deck 24 feet 5 inches. Beneath her main deck she had 53 crossbeams, 10x12's. Beneath her 'tween-deck she had 50 crossbeams, 12x12's. The distance from center to center of these beams was 4 feet.

[5] On the voyage from the United States to South America, which immediately preceded the voyage now in question, from Buenos Aires to New York, the vessel encountered a hurricane, and the previously damaged condition of the beams was aggravated, and when the ship reached Buenos Aires 4 or 5 of the beams, which ran the entire length of the vessel, were broken. But before she reached Buenos Aires, and while she was at Montevideo, she was placed in dry dock, and the surveyor ordered the broken timbers taken out; but this was not done, and in fact nothing whatever was done to them. There can be no doubt that the broken condition of the beams weakened the condition of the sides of the vessel amidships, and that the vessel leaked amidships, and was rendered unseaworthy for the carriage of dry and perishable cargo. We are also satisfied that the existing unseaworthiness of the vessel, when she was loaded at Buenos Aires, was materially aggravated by the character of the dunnage installed in the ship. The dunnage used was clearly insufficient. The bags of linseed should not have been permitted to come in contact with the skin of the ship.

[6] This suit was begun November 13, 1918. It has been pending more than four years. During this long period the libelant has been kept out of a considerable sum of money, and as we think without reasonable excuse. Rule 27, subds. 2 and 3 (285 Fed. xiv) of the Rules of this Court appear to us applicable, and libelant is entitled to damages, in addition to interest.

Decree affirmed, with interest and costs, and 5 per cent. damages.